IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No.  96-30697

---

IN RE:  MARINE SHALE PROCESSORS, INC.

---

On Application for a Writ of Mandamus
to the United States District Court for
the Western District of Louisiana

---

July 24, 1996

Before REYNALDO G. GARZA, KING, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

The petition for a writ of mandamus is DENIED.

I

This case comes to us under the following procedural posture. Our opinions have become final.  United States v. Marine Shale Processors, Inc., 81 F.3d 1329 (5th Cir. 1996); United States v. Marine Shale Processors, Inc., 81 F.3d 1361 (5th Cir. 1996); Marine Shale Processors, Inc. v. United States Environmental Protection Agency, 81 F.3d 1371 (5th Cir. 1996).  The first of these three cases, the enforcement action, in part concerned Marine Shale's appeal from the district court's order issuing certain permanent injunctions prohibiting violations of The Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-92k, The Clean Air Act, 42 U.S.C. §§ 7401-7671q, and The Clean Water Act, 33 U.S.C. §§ 1251-1376. The district court had issued three injunctions, but had stayed them pending appeal and further order of the court on the condition

that Marine Shale refrain from making certain distributions of corporate income. In our decision, we left the injunctions in place, but continued the stay[1] upon the same condition imposed by the district court. We requested the district court to issue a supplemental opinion explaining its decision to issue the permanent injunctions. Our decision in this case was designed to give the district court a maximum level of flexibility. After following the principles set forth in that opinion, the court could dissolve or continue the injunctions with or without the accompanying stay and condition, subject to appellate review in this court.

In the third of the opinions cited above, Marine Shale asked this court to overturn EPA's decision to deny an application for a Boiler and Industrial Furnace permit. We affirmed. As a result of that decision, Marine Shale currently has no RCRA permit allowing it to operate as a facility using thermal processes to treat hazardous waste. It also lacks interim status as either an industrial furnace or an incinerator. Marine Shale informs us that it will petition the United States Supreme Court for a writ of certiorari in the latter of the three cases. In the meantime, Circuit Justice Scalia has denied Marine Shale's application to recall and stay the mandate pending filing and disposition of the certiorari petition.

---

[1] Although the United States hints to the contrary in its brief to this court, our opinion did continue the stay of the injunctions in this case, and thus the stay did not expire when we issued the mandate.

On June 17, 1996, Marine Shale filed a pleading before district court Judge Duplantier styled "Motion of Marine Shale Processors, Inc. To Extend and Clarify Stay of Injunctions Pending Completion of the Administrative Process." The motion recited that, in response to telephone inquiries to EPA from facilities generating hazardous waste, the Agency had responded that, in its view, any facility sending hazardous waste to MSP after April 18, 1996 would violate RCRA. The face of the pleading itself requested two forms of relief, "an extension of the stay of injunctions pending completion of the permitting process," and an order directing EPA "not to initiate any enforcement action against any generator for shipping material to MSP after April 18, 1996 in an otherwise lawful manner during the existence of the stay." The brief accompanying the pleading, however, implied that MSP was seeking a much broader form of relief. MSP in fact asked the district court to "Exercise its Equitable Discretion to Allow MSP to Continue Operating Pending Resolution of MSP's Applications For Permits to Prevent Irreparable Harm to MSP." MSP Mot. at 6. The brief is ambiguous as to whether the reference to "permits" includes an apparently forthcoming application by MSP for an incinerator permit, which at this time has not yet been filed before LDEQ or EPA, but apparently MSP did seek to include the incinerator permit proceeding within the umbrella of issues before Judge Duplantier. See MSP Mot. at 6 ("In requesting this extension of the stay, MSP is seeking from this Court no more than a

3

preservation of the status quo pending agency action on its permits.").

Judge Duplantier heard arguments from the parties in chambers, then issued a ruling on the motion orally and on the record. At the outset, Judge Duplantier clarified that "[w]hat, in effect, Marine Shale is asking this court to do is to permit it to continue to operate pending what everybody agrees would be a very lengthy process (estimates vary from as low as a year or two to as long as five or ten years), to continue to operate during that process while it pursues an application with the State of Louisiana for a permit to operate as an incinerator of hazardous waste." Thus, with good reason, Judge Duplantier understood Marine Shale's request as including an order prohibiting EPA from doing anything to prevent MSP from operating until a final decision on MSP's incinerator permit application. This order would, in MSP's view, accompany an order staying the relevant injunctions, and apparently extending their coverage to what MSP called "its vested 'D' and 'U' interim status." Judge Duplantier then continued with the following remarks:

> Therefore, despite some language in the court of appeals decision which some interpret to the contrary, my view of this court's role in this matter is simply as follows. There is a final judgment that has already been issued with respect to the injunction process. That injunction has been stayed pending appeal. The appellate court has said that I should articulate more reasons about why I do it. The reason I do it is simply as follows. It isn't a question of irreparable injury. It isn't a question of jobs. It isn't a question of economy. It isn't a question of whether [MSP] can operate in safety and with due regard to health considerations and environmental considerations.

4

The only issue is as follows. In order to operate that facility and handle hazardous waste, Marine Shale needs a permit, either from the state government or the federal government. It does not have that permit. In order to operate pending the permit process, it needs authority not from me -- I have no such authority -- it needs authority either from this state or from the federal government, the EPA, or both. I have no authority with respect to that.

. . .

Again, to sum up, all that is before me today is the motion of Marine Shale for me, in effect, to give it authority to continue to operate and for me to tell EPA that it cannot interfere with that operation. I have no authority to do that. Whether I would like to do it or not is not the issue. The issue is whether, under the law, I have any authority to do that, and I have concluded that I have no such authority.

Therefore, I deny the motion.

## II

We believe that the district court's ruling was correct. We conclude that MSP has not shown the clear and indisputable right to relief necessary to justify mandamus, and we deny MSP's petition.

This case involves two separate issues. The first question is the status of the coercive relief that the district court ordered against Marine Shale. The second is MSP's request for coercive relief against EPA. We consider each in turn.

### A

When a court refuses to use its equitable power to order a certain activity to cease, it does not automatically render that activity legal or immunize the activity from further legal process. See Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982). As Weinberger illustrates, a district court in certain circumstances may refuse to issue an injunction even though a defendant is acting

5

illegally. Nevertheless, the illegal character of the activity is not immunized by the court's refusal to issue an injunction. Rather, the court has simply refused to employ one among several powers to remedy a particular violation of law. See id. at 314 ("An injunction is not the only means of ensuring compliance" with the Clean Water Act.). MSP sought an order from Judge Duplantier broadening the scope of the injunction against the storage of K-listed waste to include the storage of other types of waste, along with a ruling continuing the stay of all injunctions. However, contrary to the assumption in MSP's request, even if Judge Duplantier issued the requested order, it would not render MSP's storage activity legal, if the activity was in fact illegal.

Accordingly, when Judge Duplantier initially stayed the injunctions in the enforcement action pending appeal, he did not render legal MSP's unpermitted storage of K-listed waste, discharge of hot water into the Bayou Boeuf, or operation of minor emission sources. Rather, the district court held back the equitable remedy of an injunction at that time. We continued the stay pending further word from the court below concerning the findings of fact and legal reasoning supporting the issuance of the injunctions. As we understand it, the district court did not intend its oral statements from the bench in this hearing to constitute the findings of fact and conclusions of law we requested in our opinion. See 81 F.3d at 1360; Fed. R. Civ. P. 65(d). As far as MSP's pleading below concerned the injunctions Judge Duplantier had already issued in the enforcement proceeding, MSP simply sought an

6

order extending the scope of these injunctions and the accompanying stay. The district court refused the request. The refusal left matters as they stood before MSP's motion, that is, MSP is currently the subject of three injunctions, all three of which have been stayed. The stay is still in force pending the explanation we requested and a further order from Judge Duplantier either lifting the stay or dissolving the injunctions.

B

MSP's request for relief did not, however, extend merely to the injunctions entered against it. Rather, MSP sought a wholly new species of coercive order against the Environmental Protection Agency relating to this court's affirmance of the Agency's BIF permit denial. MSP asked Judge Duplantier to preclude EPA from (1) taking any action to shut MSP down while MSP completed a lengthy incinerator permit application process, (2) exercising its prosecutorial power against MSP's customers, and (3) informing inquiring entities as to the agency's litigating position. It was to this portion of the request that the district court's statements regarding power and jurisdiction were directed, and the district court's conclusions were manifestly correct. MSP has cited no statute, constitutional provision, or source of law providing a court the right to gag the EPA in this case, or to prevent EPA from exercising the power Congress gave it to respond to facilities operating in violation of RCRA. No Article III court has as yet decided any EPA request for coercive relief on the ground that MSP

7

is now a thermal treatment facility lacking both a permit and interim status as either an industrial furnace or an incinerator.[2]

We have before us now only a petition for a writ of mandamus seeking to upset a denial of MSP's request for an order prohibiting EPA from exercising the powers Congress has granted to it. We agree with the district court that it had no power to grant MSP's extraordinary motion, and we therefore deny the petition.

---

[2] It is not apparent that the discretion described by the Supreme Court in Weinberger is equally available in a case in which a facility lacks a permit necessary to bring its primary and basic activity into compliance with the law. Nor is it apparent that, if such discretion exists, equity must look past the reality that a facility for over a decade did not file an application for the permit the law required it to have before opening. Those questions must for their answer await another day.

8